Bay, J.
Delivered the following opinion below :
Without hesitátion I feel myself constrained to refuse this motion; as from the nature of the bail required by the 8th clause of the attachment act, it differs very materially from the bail required in common cases of arrest for debt; as in die one case the nature of special bail is in the alternative, to pay the condemnation money, or to render the body of defendant; whereas the 8th clause of the attachment act, requires that the attorney or other person coming in to dissolve the attachment and his security, shall be obliged to *348 enter into bail to pay and satisfy dll such sum and sums of mo •ney as the plaintiff in attachment shall obtain judgment for, against the absent debtor, that then the' attachment shall be dissolved and the goods and chattels, debts and books of accounts attached," shall be given up and delivered to the persons appearing-and giving bail as aforesaid. The above clause, tobesure, supposes that the absent debtor still con* tinued out of the State, and that his attorney on his behalij, Mad come in and given the bail abovementioned, in Order fo dissolve the attachment and get back the goods &c. But whether the attorney or the principal debtor himself returns and applies to have the attachment dissolved, it is clear, that from the nature Of the" security itself, the security must be absolute jfo pay the debt tobe recovered from defendant; and the reason of the thing itself appears to me to be obvious; for as the plaintiff in attachment had obtained a lien on the defendants goods &c. it was but fair, that he should have an absolute and unconditional security for bis' debt, before he. could be compelled to relinquish his lien on the property attached. I was, therefore, of opinion that the pro-tbonotary, or clerk of the court, acted regularly and agreeably to the uniform practice of the court, from time immemorial in such cases, by refusing the bail offered by defendant,, and further that the rule for a mandamus should be dismissed..
From ibis opinion ah appeal was taken to the Supreme court, and it now came on for judgment.
Nott, J.
The only question submitted to our consideration in this case, is, whether an absent debtor, whose goods have been attached in his absence, can on "bis return to the Stale, dissolve the attachment by entering spectt] bail to the action ? It need not be observed, for the purpbso of giving information to the bar, that previous to our attachment act, the only process by which a person could be made a pa?ty in court was by a capias directed against his body. There was no method, therefore, by which a creditor could have access to the property of a a absent ■ debtor, so asio *349 so as to subject it to the payment of his debts. The object of the attachment act was to remedy that inconvenience. It was intended to operate in the nature of a distringas, to coerce the appearance of the defendant, or, in case of his default, to make his goods liable to pay his debts. That it was intended as the means of compelling his appearance^ is apparent from the words as well as the spirit of the act. The second clause requires that the plaintiff shall serve the wife or the attorney of such absent debtor with a copy of his declaration, with a special order of court endorsed thereon, ordering when such absent debtor shall" plead or make his defence,” So such action. And if the said absent debtor shall not " appear and make his defence,” then the plaintiff shall have judgment, &c. It is obvious, that from this. provision, as well as from the general scope and design of the act, that the personal appearance of the absent debtor was contemplated in order that he might plead and make his defence. The. first enquiry then is what are we to understand by the words," appear and make his defence.’' Blackstone, (Vol. 3, 290,) speaking of the method of proceeding in cases of arrest, says, “ upon the return of the writ or within four days after, She defendant must appear, according to the exigency of the writ.” ' “ This appearance, he says, is effected by putting in and justifying bail to the action.” Here then we have the technical meaning of the word " appear,” in cases of arrest, and that is the sense, I imagine, in which we must understand it in this act. The legislature intended to give the plaintiff all the advantages which he would have had, if the defendant had been present, so that the ordinary process of law might have been served upon him, and nothing more. It was not intended to place the defendant in a better situation. He must be considered, therefore, as under an actual arrest by £he attachment of his goods, instead of his body, which therefore, stand as security for his appearance; which appearance, we have seen, can be effected only by putting in special bail to the action. Such is the practice in Pennsylvania, *350 (Sergeant on Attachment 20.) And it appears by the same author (p. 16,) that the only security authorized by their act is, “ to answer and abide the judgment of the court,” and he expressly says; “ that in a case of foreign attachment a common appearance cannot be ordered.” Such also is the practice in Maryland. (Campbell and Morris, 3 Harris and. M'Henry, 535) And the reason is obvious. The defendant being, absent, no process has been served upon him, and there is, therefore, no connecting link between him and the plaintiff, until he makes himselí a party by entering, bail to the action.
. .The next question is, what is the effect of entering bail to. the. action? The act does not say that the effect shall be a dissolution of the attachment. . But that must necessarily be the result from analogy to all our legal proceedings. The process cannot be at the same time a process m rem and- a process in personam. As soon as it attaches upon one, it loses its hold upon the other. Such is not only the practice in the United States, but it was such.under the custom of London, from whence the principles of our attachment act have been borrowed. (Sergeant 131-132. 1 Com. Dig. title Att. E. 718.) Now, it is said we have nothing to do with the custom of London; for that custom does. not prevail here. It is true we are not governed by the custom of London; but surely we may look to the source from whence any of our laws are derived, whether the common law, the civil law, or the custom of London, to ascertain the meaning of any word introduced from thence, or the sense in which any well known word was there used: Thus for instance to ascertain the meaniug of the word Bankrupt; used ih our. constitution, w.e may be permitted to go to the English laws and English decisions from whence it has been derived, al-' though those laws are not of force here. The doctrine in relation to feme-sole-traders has been introduced here from the custom of London, and .we have had occasion, more than once, to resort to that custom to aid us in deciding cases re *351 lating to that subject. With regard to the meaning of the word attachment, as used in the act, where else shall we go ? It was notknowntothe common law, in the sense it is there used. It is to that source, therefore, and to that ■ alone that we must look for its application. The same ■ may be said of ■the word garnishee’, we shall look In vain for it in the coni-» mon law. From the very source then from whence our doc*> trine of attachmentlias emanated, we learn that the appearance was by entering bail to the action, and that by such ap - pearance,.the attachment was dissolved. It is said that the absent debtor cannot stand in the relation of a defendant who has-been arrested, because the plaintiff is not required to make an oath of the justness of the demand before he issues the attachment. 1 do not know why the legislature thought proper to dispense with an oath in such case. Blit that furnishes no reason why the defendant should not substitute himself in the place of his property,, when he relieves that from' the lien which the plaintiff had upon it. Such, I find, is the practice in Pennsylvania, although no oath is required, and, that much of their law upon the subject and most of their forms of proceeding are borrowed from the. proceedings under the custom of London, and have been; sanctioned by legal adjudications and practice. (Sergeant 5. 8.) I think, therefore, that I have succeeded in shewing that such was the practice under the custom oí London, and that su'ch is the practice in Pennsylvania and Maryland, and, I suspect, that such will be found to be the practice in all the States which have attachment acts.
I now come down to our own decisions, and, I think, | shall be able to shew that such has been the practice in our courts according to the uniform construction heretofore given to our act. 1 will begin with the case of Crocker and Hitchborn vs. Radcliffe* argued in the year 1808, and decided in 1812. In that case, it was held that an attachment was a.process in personam, and not in rew, and, therefore, abated by *352 the death of the absent debtor. How could it be held that k was a process m personam, but upon the principle that the absentee by making himself a party to the suit, dissolved the attachment. Tt could not be byentering a common appearance; for that would not dissolve the attachment, and it would still be a process against the goods. It could not be under the cigth clause, for that does not contemplate the appearance of the absent debtor; but makes bis attorney personally liable for the debt Judge Brevard in the opinion which he delivered in that case, says; “ it was intended to constrain the ap“ pearance of the absent debtor., (f he appear, he may. give hail and dissolve the attachment. Upon givingbail the pro* perty is discharged.” Judge Grimlce, in the same case, says, he may appear to the action and plead within a.year and a day, ■ and dissolve the attachment. In the case of Gray Youngs (Harper’s L. R. 40,) it is said, “the writ of attachment, although a sort of proceeding in rem, like any other original writ, is intended to bring the defendant into court, and if he do appear and plead to the merits, like every other, it is functus officio.- Its peculiar characteristic is lost, and from thence the proceeding is merely personal, and must be governed by the same rules. In the same case, it is said,“the bail might have surrendered the principal,” which could not have been, if he had not entered special-bail to the action. Ido not know that the nature of the bail which had been given in that case, .was brought to the view of the court; yet it shews the opinion which they entertained on the subject, la the case of Jlcocitvs. LinnSf Lansdown, ('Harper L. R. 368,) it was decided that the defendant could not be permitted to make defence by entering a common appearance; but that he must' dissolve the attachment by entering special bail to the action. In that case also, he is considered in the same sitúa» ti on as a person actually arrested, who as we have already seen .could be permitted to plead only by entering special bail. And the case of Campbell & Morris, (3rd Harris & McHenry’s Reports, 535) is to the same effect. After *353 -doubt about the law or the practice hi our courts. The 8th clause of the act, on which so much reliance has been placed, has nothing to do with the question. That clause relates to another subject. It allows a third person, and not the defendant himself, to dissolve the attachment by making himself and his security liable for the debt; And in that case he must pursue the method therein prescribed. But 1 go further and hold that the correctness of this procedure, if not authorized, may be inferred from a clause in the act of 1785; which is in these words, “ all attachments shall be repleviable by appearance and putting in special bail, &c.” It is now contended that this was a provision of the county court . act, which relating altogether to those courts, has been repealed. It is true, it is foundin the.body of an act, the,, principal object of which was to establish county courts, and to regulate, the proceedings therein, which act has been repealed. But many of the provisions, of that act were intended to have a general- operation and still remain uurepealed. Such are She several clauses relating to the recording of deeds, those relating to bail and some others, and all the parts of the act relating to the subject of attachments are of this description. The object was to authorize the magistrates, throughout the cpuntry to issue domestic attachments, which had not -been previously allowed in this State. IVhen the s.um was within She jurisdiction of the county courts, the attachment, was returnable to those courts, but where it was above their jurisdiction, it was required to be returned to the district court. It was at.first limited to those parts of the State in which county courts were established. , But in the year lf88,. the same power was extended, to the magistrates in the other districts. .The act then became a part of. a system havings uniform operation throughout the State; and iu the act of 1785, is.to be found the clause to which I have referred. I do not think, therefore, that it can be a violation of any rule of construction to extend its application to all the acts upon the subject.. It is not t®.be supposed that the legislature intend *354 ed to adopt different rules of proceedings on the same snB” ject: It must, therefore, have been , intended to establish a uniform practice in all cases, or to conform the prac - tice in cases of domestic attachments to what was then considered the settled practice under the former act. A different construction would render the act so oppressive that nothing but words, too plain to be resisted, would make me believe that it could have been the intention of the legislature. 1? would put it in the power of any creditor, who should be a little more prompt than the rest, as soon as an ■ insolvent was without the limits of the State, to convert the whole of his property and debts to his own use, to the exclusion of all thé rest, if he should happen to owe him so much. Such a proceeding is so contrary to the spirit of our laws which contemplate an equal distribution of effects of an insolvent debt- or, that we cannot suppose that it even entered into the contemplation of the Legislature. It would not only put it in the power of one creditor, thus'to prevent all the others from having any participation iu the property, but it would enable him to render insolvent a man before in independent and prosperous circumstances. Suppose a merchant in Charleston to owe twenty thousand dollars, and to have in active ■employment stock in trade to exactly that amount, and as much more in outstanding debts, such a man would be considered worth twenty thousand dollars clear o? debt. If .¡he should leave the State for the most honest purpose his property would be liable to attachment. And an attachment from one individual would bring down all his creditors upon him. The sheriff has no means of ascertaining the exact amount or value of the property attached. He must take enough to satisfy the debt at the lowest estimate at which it would probably sell. The debtors of the absent party aré summoned, as garnishees, to declare h.ow much they are indebted to him without regard to the respective sums actually due. They are not permitted to pay any part to the absent *355 debtor, until it is ascertained how much is due to the attach» ing creditor. The consequence is, his funds are locked up to twice the amount of what he owes. His friends are afraid to assist him, for they cannot know his situation. They would become his bail, but not security to pay his debts. They would trust his property when they would not trust his honour. His goods mast be sold under the hammer ; perhaps, at half their value. His debtors die, become insolvent, or' move away, and before the matter is brought to a close, lie is a ruined man. This is not an imaginary case, it is a true picture of the state of things which would result from the construction of the act now contended for by the plaintiff in this case. Such a construction, would, as was well observed, in the course of the argument, make a departure from the State for a mere temporary purpose an act of bankruptcy of the worst kind. And it would put it in the power of one man, not only to appropriate all the effects of an insolvent man to his own use, to the exclusion of all the rest of his creditors, but would put it in his power to render one insolvent who was before in good circumstances, it is said that the construction contended for by the defendant would enable dishonest debtors to enter into combinations with certain creditors to give them a preference to others, extremely injurious to the commercial interest of the community; but that may be done unuer any construction. Not more so under this, than any other. It would be no more difficult to enter into collusion with a creditor to be the first to attach, than to give a preference after the attachment was served. Commercial prosperity depends upon the active employment of capital and not in keeping it locked up; in an equal distribution of insolvents’ estates and not in giving them exclusively to one, or to a few. And, except a few creditors who may now have got a preference by their attachments, there cannot be a merchant in Charleston who can wish a construction -of the act to prevail, which would lead to such consequences. 5 am of opinion, therefore, that the *356 decision below, ought to be reversed and that the defendant be permitted to enter special bail to the action. (a)

 4 Brev.M. S. Rep. 85, in possession of the Reporter,

 (Note by Ms Honor.) Since writing the above opinion, I have seen the Pennsylvania act. There is no provision authorizing the defendant to dissolve the attachment by entering special bail to the action. The act provides that where the sheriff shall attach goods in !thc hands of a garnishee, he may take possession of them, “unless the garnishee will give security therefor. ” The condition of the bond in such case is to “abide and perform the judgment of said court.” (Sergeant 209.) The act further provides in cases where the garnishee has thus entered into such bond, that if the plaintiff in the attachment obtain a verdict, judgment and execution, for the money and goods in the garnishee’s possession, yet the defendant in the attachment may, at any time before the money be paid, put in bail to the plaintiff’s action, upon which the attachment is grounded; whereby the garnishee will and shall be immediately discharged. I infer, therefore, from what Sergeant has said, with regard to their practice, that he might, as a matter of course, dissolve the attachment at any time previous to such judgment, by entering Special bail to the action, in the usual form.